UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 21-0754 JGB (SPx)** | Date | April 25, 2024 |
| Title | *Phillip Brooks v. City of Palm Springs, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):       Attorney(s) Present for Defendant(s):

None Present                                                  None Present

**Proceedings:   Order (1) DENYING Defendant's Motion for Judgment on the Pleadings (Dkt. No. 135); and (2) VACATING the April 29, 2024 Hearing (IN CHAMBERS)**

Before the Court is a motion for judgment on the pleadings filed by defendant HHC TRS Portsmouth LLC ("HHC" or "Defendant"). ("Motion," Dkt. No. 135.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion and **VACATES** the April 29, 2024 hearing.

## I. BACKGROUND

On April 28, 2021, plaintiff Phillip Brooks ("Brooks" or "Plaintiff") filed a complaint against defendants City of Palm Springs ("City"), HHC, Officers Jacob Valdivia, Gonzalez, and Stephanie Sandoval (collectively, "Officer Defendants"), Michael Whited ("Whited"), and Does 1 through 10. ("Complaint," Dkt. No. 1.) On June 21, 2021, Plaintiff filed a first amended complaint as of right. ("FAC," Dkt. No. 11.)

On July 6, 2021, the City and Officer Defendants filed a motion to dismiss. ("MTD," Dkt. No. 23.) On August 20, 2021, the Court granted the parties' request to dismiss Whited without prejudice. ("Whited Dismissal," Dkt. No. 33.) On August 27, 2021, the Court granted the MTD and dismissed Claims Four and Eight with leave to amend. (Dkt. No. 34.)

On January 26, 2022, Plaintiff filed a second amended complaint. (Dkt. No. 43.) On August 2, 2022, HHC filed a third party complaint against Goldenvoice LLC ("Goldenvoice"),

Chad Holden ("Holden"), and Whited (collectively, "Third Party Defendants"). ("Third Party Complaint," Dkt. No. 54.) On August 26, 2022, Goldenvoice answered. (Dkt. No. 66.)

On February 28, 2023, Plaintiff filed a third amended complaint which included Goldenvoice as a Defendant. ("TAC," Dkt. No. 79.) The TAC alleges twelve causes of action: (1) unreasonable seizure and excessive force; (2) equal protection violation; (3) first amendment retaliation; (4) violation of the California Bane Act ("Bane Act Claim"); (5) violation of the California Ralph Act ("Ralph Act Claim"); (6) violation of the California Unruh Act; (7) battery; (8) negligence; (9) intentional infliction of emotional distress; (10) breach of contract; (11) false arrest; and (12) malicious prosecution. (See TAC.) On March 14, 2023, HHC answered the TAC. (Dkt. No. 80.)

On September 11, 2023, Goldenvoice filed a motion for judgment on the pleadings as to the causes of action against Goldenvoice—four, five, six, eight, nine, ten, eleven and twelve in the TAC—pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). ("Goldenvoice MJP," Dkt. No. 98.) On September 25, 2023, Plaintiff opposed. (Dkt. No. 99.) On October 2, 2023, Goldenvoice replied. (Dkt. No. 100.) On November 17, 2023, the Court granted-in-part and denied-in-part the Goldenvoice MJP. ("Goldenvoice MJP Order," Dkt. No. 110.)

On November 27, 2023, Plaintiff filed a fourth amended complaint. ("4AC," Dkt. No. 111.) On December 14, 2023, HHC answered the 4AC. ("4AC Answer," Dkt. No. 115.)

On March 18, 2024, HHC filed this Motion for judgment on the pleadings as to Plaintiff's Bane Act Claim and Ralph Act Claim against HHC pursuant to Rule 12(c). (Motion at 2.) In support, HHC filed a request for judicial notice. ("RJN," Dkt. No. 135-2).[1] On March 27, 2024, Plaintiff filed an opposition. ("Opposition," Dkt. No. 136.) On April 8, 2024, HHC filed a reply. ("Reply," Dkt. No. 138.)

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges the following in the 4AC. Plaintiff Phillip Brooks, an African American man, alleges that Goldenvoice violated his constitutional rights when it subjected him to racial discrimination and excessive force during a June 2019 encounter with defendants. (See 4AC.) The events at issue took place at the Renaissance Hotel located at 888 E. Tahquitz Canyon, Palm Springs, CA ("Hotel"), owned and operated by HHC. (Id. ¶¶ 5, 14.) In June 2019, Defendant

---

[1] Judicial notice is not necessary for the Court to consider its own docket. See, e.g., Ranero v. Cnty. of San Bernardino, 2018 WL 8058373, at *3 (C.D. Cal. Mar. 12, 2018) ("[T]he Court takes judicial notice of its own docket as a matter of course."); Chaffey Joint Union High Sch. Dist. v. FieldTurf USA, Inc., 2017 WL 3048658, at *2 n.2 (C.D. Cal. Feb. 28, 2017) ("The Court may of course take judicial notice of filings and pleadings on its own docket . . . . But such requests are unnecessary; Defendants may cite directly to the docket to reference such orders.") (citations omitted). The Court therefore **DENIES** the RJN as unnecessary.

Goldenvoice hosted Splash House, a pool party music festival, at the Hotel. (Id. ¶¶ 6, 14.) At Splash House, attendees are encouraged to purchase alcohol and to bring their own. (Id. ¶ 15.) The Hotel holds several after parties to the festival. (Id.)

Plaintiff made reservations at the Hotel from June 7, 2019 to June 10, 2019 to attend Splash House. (Id. ¶ 14.) On June 8, 2019, while he was at the festival, Plaintiff realized he had misplaced his hotel room key. (Id. ¶ 16.) He went to the front desk of the Hotel and requested a replacement key. (Id.) The Hotel's front desk manager, Mayra Rodriguez ("Ms. Rodriguez") informed Plaintiff that because he didn't have his identification, a Hotel security guard would have to escort him to his hotel room. (Id. ¶ 17.) Only upon display of his identification would Hotel staff give Plaintiff a replacement key. (Id.)

While Plaintiff waited for Hotel security to escort him to his room, two White women approached the front desk and asked Ms. Rodriguez for a key to their friend's room. (Id. ¶ 18.) Ms. Rodriguez asked the women to provide their friend's birthdate in order to issue them a key, but they did not know it. (Id.) Ms. Rodriguez then asked for the friend's phone number. (Id.) After they provided the phone number, Ms. Rodriguez gave the women a key to the friend's room. (Id.)

After he witnessed the difference in Ms. Rodriguez's response, Plaintiff told Ms. Rodriguez that the differential treatment was racist, and provided her with his phone number. (Id. ¶ 19.) Ms. Rodriguez insisted that he would not receive a replacement key until he showed his identification. (Id.) Plaintiff then requested to speak with the Hotel manager. (Id.) However, after Plaintiff complained to the Hotel's Director of Rooms, Marco Rodriguez ("Mr. Rodriguez"), that he felt that Ms. Rodriguez had subjected him to racist treatment, Mr. Rodriguez told Plaintiff he had to go. (Id. ¶ 20.) Then Whited, an agent for Goldenvoice acting within the course and scope of his agency, arrived and told Plaintiff that he needed to leave the hotel or Goldenvoice's security would pack his bags for him and essentially make him leave. (Id. ¶ 21.) Then a security guard and agent for Goldenvoice, ("Doe 6") escorted Plaintiff to his room—he told Plaintiff that he needed to pack his belongings and leave the hotel and that there was no need rush because he was getting paid overtime. (Id. ¶ 22.)

Unbeknownst to Plaintiff, Mr. Rodriguez, acting within the course and scope of his employment, contacted Palm Springs Police Department ("PSPD"), reported that Plaintiff was intoxicated in the Hotel lobby, and requested that police officers come to the Hotel. (Id. ¶ 23.) Whited also called the PSPD on Plaintiff. (Id. ¶ 24.) At approximately 9:57 p.m., Defendant PSPD Officers Jacob Valdivia, Gonzalez, and Stephanie Sandoval arrived at Plaintiff's hotel room. (Id. ¶ 25.) Officer Defendants watched Plaintiff as he packed his belongings. (Id.) Does 6-10 stayed in or around the room "to act as extra muscle or security to assist the officers if necessary." (Id. ¶ 26.) As Plaintiff began to exit the room, he noticed a bottle of alcohol on the table. (Id. ¶ 27.) He told the officers he was going to take a shot of liquor. (Id.) Officer Defendants did not object as they watched Plaintiff pour himself a drink. (Id.) Plaintiff then rose his glass and said, "Toast to the racism." (Id.)

Immediately after, Officer Valdivia violently tackled Plaintiff to the ground.  (Id. ¶ 28.) Officers Valdivia and Gonzalez then placed Plaintiff in extremely tight handcuffs.  (Id.)  Plaintiff told Officer Defendants that the handcuffs were too tight and that it was painful.  (Id.)  Plaintiff asked Officer Defendants to loosen the handcuffs, but they ignored him.  (Id.)

Next, Officer Valdivia escorted Plaintiff down the hallway, Officer Valdivia forcefully bent and twisted Plaintiff's wrists and fingers—Officers Sandoval and Gonzalez witnessed Officer Valdivia continuously bend and twist Plaintiff's wrists and fingers and did not object or intervene.  (Id. ¶ 29.)  During this incident, Officer Valdivia told Plaintiff he wouldn't be able to shoot a basketball with his right hand anymore.  (Id. ¶ 30.)  Soon after, Plaintiff fell to the ground.  (Id. ¶ 31.)  Officers Valdivia and Gonzalez violently yanked Plaintiff up from the floor by his wrists which caused Plaintiff to suffer extreme pain.  (Id.)  They then informed Plaintiff that he was under arrest for trespassing.  (Id. ¶ 32.)

As the Officer Defendants continued to escort Plaintiff out of the Hotel, his shoe came off.  (Id. ¶ 33.)  Plaintiff asked Officer Defendants to put his shoe back on, but Officer Defendants refused and forced Plaintiff to walk through the Hotel lobby with only one shoe.  (Id.)  Officer Valdivia told Plaintiff, "You're not getting your shoe.  We're going to make you look like an idiot."  (Id.)

Whited asked PSPD if he could do a private person's arrest "so that Goldenvoice could maliciously prosecute Plaintiff for complaining about racial discrimination at the hotel."  (Id. ¶ 34.)  Officer Valdivia then completed a Private Person's Arrest form for Plaintiff, and Whited signed it.  (Id. ¶ 35.)  Officer Valdivia made false statements in his report.  (Id. ¶ 36.)

### III.   LEGAL STANDARD

HHC moves for judgment on the pleadings pursuant to Rule 12(c).  Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").  Like a Rule 12(b)(6) motion, a Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings.  For purposes of a Rule 12(c) motion, the allegations of the non-moving party must be accepted as true.  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (citing Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984)).  Further, all allegations of the non-moving party must be construed in favor of that party.  Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).  Judgment on the pleadings is proper when the moving party establishes that no material issue of fact remains to be resolved and it is entitled to judgment as a matter of law.  Hal Roach, 896 F.2d at 1550.

When granting a motion for judgment on the pleadings, a court should grant leave to amend if the complaint can be cured by additional factual allegations.  Somers v. Apple, Inc., 729 F.3d 953, 960 (9th Cir. 2013).  However, "dismissal without leave to amend is proper if it is clear that the complaint [cannot] be saved by amendment."  Id. (citation omitted).

## IV.  DISCUSSION

HHC moves for judgment on the pleadings on the grounds that Plaintiff's Claims Four, and Five fail to state a cause of action against HHC. (Motion at 2.)

**A. Bane Act (Claim Four)**

HHC argues that Plaintiff's fourth cause of action fails as to HHC because Plaintiff fails to allege that (1) HHC engaged in violence or intimidation by threat of violence, and (2) race was a substantial factor in HHC's actions. (Motion at 12-16.) "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007). A plaintiff must show "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." Lawrence v. City & County of S.F., 258 F. Supp. 3d 977, 994-995 (N.D. Cal. 2017); see also Cal. Civil Code § 52.1(b)-(c).

Plaintiff alleges that Ms. Rodriguez and Mr. Rodriguez, who were acting as agents of HHC, interfered by threats, intimidation, or coercion with Plaintiff's rights to be free from false arrest, malicious prosecution and race discrimination. (4AC ¶ 69.) The allegations specific to HHC agents include the following: Ms. Rodriguez discriminated against Plaintiff on the basis of his race; Mr. Rodriguez told Plaintiff that Plaintiff had to go; Mr. Rodriguez contacted PSPD and told them that Plaintiff was intoxicated in the Hotel lobby and requested that police come to the Hotel. (4AC ¶¶ 19, 20, 23.) HHC argues that these allegations do not amount to a Bane Act claim. (Motion at 14.) Plaintiff argues that he properly pleads that HHC interfered with his rights to complain about his discrimination and enjoy his hotel stay free of discrimination, through threats, intimidation, or coercion. (Opposition at 4-6.)

In its Motion, HHC clearly argues that the "Bane Act **requires** that Defendants engage in violence or intimidation by threat of violence," and that to state a cause of action under the Bane Act, there "**must first be** violence or intimidation by threat of violence." (Motion at 13) (emphasis added). However, after Plaintiff points out that HHC's argument is flawed because it relies on bad law (Opposition at 4-6), HHC seemingly flip-flops its argument—"Defendant does not attempt to argue that an act of violence is required to sustain a claim under the Bane Act," rather, "Defendant 'acknowledges that the threat of violence or coercion is sufficient.'" (Reply at 3) (citing City and County of San Francisco v. Ballard, 136 Cal. App. 4th 381, 408 (2006)). Just two sentences later, HHC again argues that "a claim under the Bane Act does require a plaintiff to prove/allege that defendant used violence or threats of violence." (Reply at 3.) Based on this inconsistency, along with HHC's inability to provide authority to support the proposition that violence is a necessary, not sufficient, element of the Bane Act, the Court rejects HHC's first argument. HHC also argues that Plaintiff fails to plead a connection between Mr. Rodriguez's call to PSPD and Plaintiff's race. (Motion at 15.) The Court finds this argument

unpersuasive considering Plaintiff's allegation that Mr. Rodriguez's actions took place immediately after he was made aware of Plaintiff's complaints—"after Plaintiff complained to Mr. Rodriguez that he felt that Ms. Rodriguez had subjected him to racist treatment, Mr. Rodriguez told Plaintiff he had to go." (4AC ¶ 20.)

Whether Mr. Rodriguez called PSPD on Plaintiff because he was intoxicated, because he complained of racial discrimination, or both, is a factual question to be determined at a later stage. Regardless, Plaintiff pleads that as a paying customer, he had a right to be in the Hotel, that he had a right to complain of Ms. Rodriguez's alleged racial discrimination, and that Mr. Rodriguez—by his instruction to leave the Hotel and subsequent call to the police—interfered with Plaintiff's rights. (4AC ¶ 19-23.) The Court finds that HHC's agents' alleged actions, construed in favor of Plaintiff, amount to threats, intimidation, or coercion under the Bane Act. Accordingly, the Court **DENIES** the Motion as to the Claim Four.

### B. Ralph Act (Claim Five)

HHC argues that Plaintiff's fifth claim fails as to HHC because Plaintiff does not sufficiently plead that HHC participated in any act of violence against Plaintiff. (Motion at 18.) The Ralph Act protects one's right "to be free from any violence, or intimidation by threat of violence, committed against their persons or property" on account of a protected characteristic. Cal. Civ. Code § 51.7(b). To show a violation of the Ralph Act, a plaintiff must establish (1) that the defendant threatened or committed violent acts against the plaintiff; (2) that the defendant was motivated by his perception of plaintiff's protected characteristic; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff's harm. I.H. by & through Hunter v. Oakland School for Arts, 234 F. Supp. 3d 987, 995 (N.D. Cal. 2017).

Plaintiff alleges that HHC threatened him with violence when HHC caused the false arrest, malicious prosecution and false imprisonment of Plaintiff under the false pretenses of trespassing because Plaintiff complained of racial discrimination. (4AC ¶¶ 87, 131, 142.) HHC challenges Plaintiff's claim as to the first prong of the Ralph Act test—the requirement that Plaintiff allege that Defendants committed or threatened violent acts against Plaintiff. Cal. Civ. Code § 51.7(a); See Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2009) (citing Austin B. v. Escondido Union School District, 149 Cal. App. 4th 860, 880-81 (2007).

There is no requirement that the violence be extreme or motivated by hate. Wintaro v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1289 (9th Cir. 2001). The test for violence is "would a reasonable person, standing in the shoes of the plaintiff, have been intimidated by the actions of the defendant and have perceived a threat of violence?" Id. It can be reasonably inferred from the facts alleged in the 4AC that a reasonable person in Plaintiff's shoes could perceive a threat of violence from Mr. Rodriguez's instructions and actions. (See 4AC ¶¶ 19-23; see also Opposition at 8.) Defendant also argues that Plaintiff does not allege facts that race was a substantial factor in HHC's actions—the Court rejected this argument

above. The Court finds that Plaintiff sufficiently pleads a claim for a violation of the Ralph Act and **DENIES** the Motion as to Claim Five.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** HHC's Motion. The Court **VACATES** the April 29, 2024 hearing.

**IT IS SO ORDERED.**